Mr. Chief Justice, and may it please the Court, in Grable, this Court explained that arising under jurisdiction demands not only a contested Federal issue, but a substantial one embedded in a State claim in order to indicate whether there is a serious Federal interest in exercising Federal jurisdiction over the State. And this Court should reverse the judgment below, because Mr. Minton's claims do not present a substantial Federal issue, and exercising Federal jurisdiction over his claim and legal malpractice claims like his, State legal malpractice claims, would. Ginsburg The question is whether the experimental use, whether that was a viable theory. Why isn't that a substantial? What do you mean by substantial? Well, Your Honor, defining substantiality is a difficult point. I would answer in two layers. First, Mr. Minton's claim did not involve a legal question of does the experimental use doctrine work, how is it applied, what are its parameters. The question was, did his fact-bound and situation-specific affidavit present a relevant evidence of the application here in this particular case. And it is not a substantial question because, first, from a unique case perspective, it involved merely a hypothetical determination. There were no actual patent rights that would be at issue. Those were already fully, finally, irrevocably determined in the underlying patent litigation in Federal court. And second, from a jurisprudence standpoint, the question of uniformity of patent law, any decision by a State court in Mr. Minton's legal malpractice claim would not be binding in any way on either the PTO in a patent application or on any subsequent Federal court deciding a real patent case. So you mean substantial beyond the this particular case? Yes, Your Honor. And I think that that's where the Federal circuits' jurisdictional the Federal circuits arising under jurisdiction standard, which the Supreme Court of Texas applied here, that's exactly where it goes awry, is that the court improperly conflates the question of necessity of a Federal issue with the question of whether that issue is substantial. And in the Grable case, this Court emphasized that those are two separate issues. There are four prongs to the Grable test. The Federal issue embedded in the State claim must be necessary to the State claim, actually disputed, substantial, and then there's a Federalism inquiry that exercise a Federal jurisdiction over this State claim can't upend the proper balance between State and Federal authority. The Grable court announced that, and then just a year later, in the Empire Health Choice case, Your Honor, Justice Ginsburg, you wrote that opinion for the court, and that acted sort of as an underscoring of, and here's how limited the Grable rule really is. The Empire Health Choice opinion distinguishes between Grable, which presented a nearly pure question of law, and the claims that issue in Empire Health Choice which were fact-bound and situation-specific. It distinguished the question of whether a State court is competent to apply Federal law to the extent relevant to the claims, and found that, yes, it was. And the Court emphasized that certainly the State courts are going to be deciding the occasional Federal issue here and there, but let's not make a Federal case out of each and every State tort claim that might have an embedded Federal issue. Now, in the earlier argument, there was some discussion of the fact that jurisdiction means a lot of different things in a lot of different contexts. But here, this Court has, on more than one occasion, determined that jurisdiction arising under jurisdiction means the same thing in 1331, the general Federal question jurisdictional grant, and 1338a, the exclusive provision that's applicable specifically to patents. Now, that has been amended slightly. It now includes compulsory counterclaims where they didn't used to be a part, but the jurisdictional grant that Congress gave through the first sentence of 1338a uses the same exact phrase, the arising under, any civil action arising under Federal law. And, Justice Scalia, you wrote the opinion for the Court in the Holmes Group case and explained that the linguistic consistency between those two means that they mean the same thing. There is nothing unique about the subject matter, the patent subject matter, that changes the scope of the jurisdictional grant. To be sure, the grant of original jurisdiction to the district courts is exclusive, and that's different from the general Federal question.  and that's different from the general Federal question. Alito Well, why isn't that significant? Doesn't that manifest Congress's view that this is a complicated specialty area, and so there would be arguably a special reason for having these cases, cases that involve a patent issue in Federal court rather than State court? Yes, Your Honor, but Congress did that in a couple of different ways. First of all, I think it begs the question, it begs the core question to say that exclusive, the fact that jurisdiction is exclusive, answers the substantiality, because in order to get to exclusivity of the jurisdiction, you have to get to jurisdiction first. It has to be arising under an act of Congress relating to patents before it can then be exclusive. So we still have the first step, but also Congress did not cast the net broader than the general arising under standard. Even under the statutory framework after the American Vents Act amendments, under the statutory structure, there are still a number of patent issues, legal issues that are going to be decided in the State courts that do not come within the exclusive jurisdiction of the Federal courts. For example, compulsory counterclaims now come within the exclusive jurisdiction, but permissive counterclaims don't. A permissive counterclaim can certainly present just as substantive a question of patent law, and yet those are excluded under the statutory scheme of 1338A. Patent issues raised as a defensive matter are not sufficient to support arising under jurisdiction under 1338A. So certainly Congress contemplated a situation where some patent issues are just not going to come within the exclusive jurisdiction of the Federal courts. And I think it's interesting to back up a little bit and look at the Federal circuit's evolved perception of its own exclusive jurisdiction. In the early years of the Federal circuit, in 1984, the first Chief Justice of the Court, Chief Judge Markey, in the Atari case that's cited at page 21 of the amicus brief filed by the American Intellectual Properties Lawyers Association, the Federal circuit wrote, Congress was not concerned that an occasional patent law decision of a regional circuit court or of a State court would defeat its goal of increased uniformity in the national law of patents. And that was the view of the Federal circuit's own jurisdiction in 1984, but in the time evolved, the Federal circuit has changed its perception of its own jurisdiction, and that's why we're here today. Because in 2007, the Federal circuit went awry and changed the standard that no longer follows what this Court articulated in Grable. They've improperly conflated the necessity and substantiality components of an appropriate Grable analysis, and they wholly disregard a proper balance of the State and Federal interest. The Federal circuit announced that there's an interest in the Federal interest in uniformity of patent law, and then that was that. That was the end of the inquiry. There is no balance if you don't look at the State interest on the other side. And in legal malpractice cases in general and in Mr. Minton's claim in particular, there are substantial State interests. There's the general interest, the right of a State to develop its own State claims, its own State law, and its own State courts. But there's also a State interest in governing the relationship between attorney and client that happens through the legal malpractice process. But specifically with regard to Mr. Minton's claim, one of his primary theories in this case, in the legal malpractice case, is that the attorney's error with regard to bringing up the experimental use doctrine deprived him of the opportunity to make a lucrative settlement with the NASD in the underlying patent litigation. Well, the question of exactly how you prove whether and to what extent the NASD would have paid a settlement and for how much in the underlying case is a matter of tremendous dispute right now. That is an evolving issue in the legal malpractice jurisprudence of the State of Texas. In fact, in the month of December 2012, the Supreme Court of Texas heard argument in a case called Elizondo v. Crist that addresses that precise issue. How do you prove that NASD would have paid him $100 million if only these lawyers had raised this issue earlier? And yet, if this Mr. Minton's claims are hailed into Federal court because of the fact-bound and situation-specific application of the experimental law doctrine, the Federal courts will be eerie guessers as to that important issue that the State courts really need to resolve. Scalia. Sotomayor, is there any binding effect of a Federal determination here on State law, and is there any binding effect of any State determination here on Federal law? No, Your Honor. If it was left to the State, would what the State say about patent law be binding in any Federal cases, and vice versa? If it went to the Federal jurisdiction, would anything the Federal court says about State tort law be binding on State courts? In neither direction would any decision be binding. The State, any decision in a State court on legal malpractice matter regarding issues of patent law would not be binding in any way on the Federal courts or on the PTO in handling any of the patent applications, prosecution of patents. That being so, your last argument about the Federal government messing up, you know, State tort law in an area that is currently very much in the fore in the decisions of the Texas Supreme Court, that doesn't really carry a lot of weight, except in this single case. I mean, they're not going to mess up Texas law in that regard. They may get this case wrong, but. You're right that it will not substantially, adversely impact Texas State law, but that's an illustration of a substantial State interest. And in a way, it's akin to the issue in Grable, because the embedded issue in Grable that justified this Court reaching down and grabbing a State law claim and bringing it up into Federal courts wasn't just that the issue was disputed, that the construction of that statute was unresolved, but that it needed resolving. It needed resolving by a court whose decision could be precedential, so then it's resolved from then on. And so the question of how do you prove a settlement is an issue that needs resolving by a court who's going to advance the jurisprudence. Scalia, what about the Federal issue? Doesn't that need resolving? There are no Federal issues that need resolving here, because it's solely a question of the application of these specific facts in this affidavit to the doctrine. There's no overarching question of patent law that needs resolving. Kennedy, which you could have mentioned. Kennedy, let me ask this question. Suppose you have two cases, hypothetical, case A and case B. Both involve the experimental use doctrine in Federal patent law. In case A, it's a very weak argument. It's most unlikely it's not going to apply. Case B, very strong argument, experimental use doctrine applies. Any difference in the removability in those two cases? I don't believe so, Your Honor, because the question isn't the significance to the particular claim. The question is the Federal issue. Is there a issue? Well, if you say you're going to say, I'm interrupting you, that it's a substantial Federal issue, then it's substantial in hypothetical B, but not in hypothetical A. Well, it's perhaps more necessary, but and maybe what I need to do is back up a little bit and discuss what I think are the factors for a court to look at when deciding whether or not an embedded Federal issue is a substantial one. And looking at this Court's articulation in the Grable case and the Empire Health Choice case, the issues that the Court looked at, one was the nature of the Federal question itself, the Federal issue. Is it a constitutional issue? Sotomayor So does that mean that if the claim in the malpractice action is that the PTO acted unconstitutionally? Assume that set of facts. How does that change your analysis? That would be a more substantial Federal question than the one presented here, but I submit that it would not be sufficient to warrant a rising under jurisdiction here because it is, it involves only a hypothetical, actual set of patent rights. No judgment that can happen in a State legal malpractice case actually impacts any patent rights. Let's say Mr. Minton won a judgment from a State legal malpractice court saying it was the negligence, that you would have won the experimental use exception, your patent would have been declared valid, and so he has a judgment from a State court saying the loss of your patent was the result of the negligence and not because it was actually invalid. That doesn't give him a valid patent. He cannot take that judgment and then sue somebody and say, look, look, I've got a patent. And it's so go back to you were going through a list of questions, and I posited let's assume that the malpractice claim does involve a constitutional question. Then what other factors? Well, the the in the continuum, constitutional issues would be more substantial. Statutory issues would be a little less substantial. In fact, this Court grappled with that in the Grable case and said we're not going to draw a hard and fast line on statutory issues. But then in the Empire Health Choice opinion, the Court noted that this is a non, the issue, Federal issue there was non-statutory, and so therefore let's not make a Federal case out of it. So in that continuum, that would be one factor to look at. Another factor to look at would be is the Federal issue, the legal issue, undisputed or uncertain? Not necessarily the application of these particular facts to the legal issue, because there really isn't a Federal interest in how this affidavit is construed or not, but in the resolution of the legal issues. As in Grable, is the question of law disputed or uncertain? And the corollary to that is, does it need resolving? Because that was the situation in the Grable case. But just because an issue is novel doesn't ipso facto make it a substantial issue. This Court in the Merrill Dowd case discussed that. Scalia. Why do all of these issues cut in your favor in all cases involving malpractice? I mean, you're urging not just that your client win here, but you want us to adopt a general rule that malpractice suits involving patent rights can never, ever come under Federal arising under jurisdiction. Isn't that what you want us to say? Yes, Your Honor. So the burden would be on you to show that every one of these factors in all of those cases is always going to cut in your favor, that they will never involve a constitutional issue, that they will never, ever determine future patent decisions? Well, Your Honor, I urge that because I think that's the only appropriate application of the Grable test to legal malpractice cases. And that is not that. Well, I like bright-line rules. And in fact, you know, I thought Holmes had it right. It doesn't arise under unless the cause of action is a Federal cause of action. But once we've gone down the road of Grable, I don't know, you're proving a negative. The burden is on you to prove a negative, that there's no situation that can arise in malpractice cases involving patents where the Federal issue would justify arising under jurisdiction. That's a hard road to hoe. I think there are two reasons. There are two reasons why that's the only appropriate way to apply the Grable's test to legal malpractice cases, and both of them involve the lack of precedent from the case. One is it can never involve actual patent rights. The consequence of the judge's claim of fraud on the malpractice was fraud on the PTO. The lawyer loses that. It's been litigated. Isn't it res judicata? And won't it affect the patent, or might it not affect the patent in a patent action? No, Your Honor, it would not. It would not affect the patent office either as a matter of res judicata or as a matter of issue preclusion, nonmutual issue preclusion, or as a matter of jurisprudential precedent for a couple of reasons. One is that, as a starting point, the question of attorney misconduct can affect the issuance of a patent before the patent office, but that would happen not in the context of a legal malpractice claim, but in the context of the actual prosecution of the patent before the PTO itself. So the PTO would have made a its own determination and granted or not granted, limited, sanctioned, whatever action it is the PTO takes in before, in a proceeding before itself, the PTO would be deciding that. So a legal malpractice case would only be subsequent to that. So in the first instance, the PTO gets to decide that. From a res judicata standpoint, the PTO's patent review manual, the manual of examination of patents provides that res judicata effect is only given to decisions by the PTO by either the Board of Patent Review or Interferences, the United States District Court for the District of Columbia, and the Federal Circuit. No State courts make that list. So from a res judicata standpoint, only going right up the chain is going to bind the PTO. And from an issue preclusion standpoint, the PTO would never be a party, could never be a party to a legal malpractice claim, and therefore would not be bound by any State court decision. And what's a kind of a funny Sotomayor's Court, I find that somewhat hard to follow. Let's assume in adjudicating a medical – a malpractice claim, the State court finds that the attorney suppressed information. It's a finding of fact. He had this information in his or her file, and they didn't disclose it. I'm not quite sure how the PTO ignores that litigation. The PTO may not ignore it. Or the district court doesn't if it gets to review that in a later action. Well, but I'm only raising this question to address Justice Scalia's point. You're asking for an absolute rule, and I posited a situation where I think it's not so clear that a State court finding might not have an effect. So do we have to go to your absolute rule? No, Your Honor, you do not have to go to my absolute rule. I think that the absolute rule is the most sensible and appropriate application of the Grable test to State law legal malpractice claims, and it has the added benefit of certainty. It doesn't roll us back to the Justice Holmes rule. Scalia, I guess you might argue that even if it fails the Grable test in a couple of isolated cases, we should still adopt that rule, because the benefits of having a clear rule that doesn't have to be litigated in every case outweigh the fact that one or two might not come out that way if we applied Grable, because we're making it up anyway, right? Well, Your Honor, I would take it a step further than that, because I think that any actual impact of what you're positing, Justice Sotomayor, is so ephemeral. The idea that the PTO will look at a fact-finding in a legal malpractice case and, oh, goodness, I didn't realize there was this suppression of evidence, I'm now going to dig further. Well, that's such a speculative and ephemeral possibility. It doesn't disrupt the fabric of patent jurisprudence, patent law in any way, and it doesn't tie the hands of the PTO in any way. It doesn't bind the PTO in any future consideration of a continuation patent or any other related continuation in part patent. Let me ask you this. The Wright and Miller Treatise is rather complimentary of Grable. It says it brought considerable certainty to the area. I was pleased to hear that, because I'm not sure that that's true. But can you just tell me, as an empirical matter, does a rising under for removal jurisdiction cases consume a tremendous amount of time and litigation in the Federal courts? It's just — Well, it does a couple of things. First is, it consumes a lot of time of the courts and the litigants in removing and then getting remanded again, and it, as is discussed in the amicus brief. What I mean is the argument over a rising under, over jurisdiction. There are, on this issue of the legal malpractice cases, in the wake of the Federal Circuit's opinions, the Air Measurement case, the Immunicep case in 2007, scores and scores and scores of courts, State and Federal courts, have been grappling with this precise jurisdictional issue. I think this case is about the fifth or sixth cert petition that came up to this court on this jurisdictional question. I think there are three or four behind us in queue, and there continues to be uncertainty in the lower courts on this precise issue. And it really presents for this Court a question of, is a rising under jurisdiction truly a lenient standard, as the Federal court has articulated? Now, it's true that the entire body of State law legal malpractice cases arising out of patent representation is not going to overwhelm the Federal court. It's not going to tumble over. Well, my question was even broader. I mean, let's say we resolve legal malpractice. Then we'll have product liability with a particular product. Then we'll have some sort of an agriculture case, and it goes on and on. Well, I think that's a — that is a — that's a substantial issue. But like Justice Scalia said, that — you know, the just — this Court departed from Justice Holmes' construct some years ago. But I think that there is the opportunity in this case to provide a great deal of certainty, to provide absolute certainty vis-a-vis legal malpractice cases, because of their unique hypothetical aspect. The consequence of the judgment affects no rights. But second, in reaffirming, rearticulating the Grable test, emphasizing the importance and the separateness of the substantiality inquiry, emphasizing the importance of the Federalism aspect, this Court has a great opportunity to resolve a lot of uncertainty. And if there are no further questions, I'd like to reserve the remainder of my time. Thank you, counsel. Mr. Michel, is that correct, Michel? It is, Your Honor. Thank you. Mr. Chief Justice, and may it please the Court, this case is about whether a State court has subject matter jurisdiction over a State law patent malpractice claim that rests entirely on an issue of patent law that is only heard in Federal court. And when that issue is dispositive, central to the case, has issues of first impression in them, has no State analog in any other area of the law, and whether in deciding issues of questions of law, and will not disturb the balance between State and Federal judicial responsibility. What about other areas of exclusive Federal jurisdiction, where the claim, if you were stating it initially, would have to go into Federal court and not State court, say, an antitrust claim, a copyright claim? Is it what you're saying about patent? Does that go for every area where initial jurisdiction is exclusively in the Federal court? No, Your Honor. It does not. What's the difference between, say, antitrust and patent? There are many differences, Your Honor. First, antitrust has a State analog. The Texas Supreme Court in Coca-Cola v. Harmer, 218 Southwest. Then take immigration law. Yes. Don't get in the weeds. Take immigration law. Yes. No. Once again, the issues with immigration law may be a differing area where there's exclusive Federal court jurisdiction in that area, possibly, but once again, the analysis and the application in immigration law from a malpractice case may give rise in that area. However, excuse me. Yes. Scalia. I guess I just don't understand this. Is it the case that there is a rising under jurisdiction only when the Federal cause of action presented is one over which Federal courts have exclusive jurisdiction? That is a different case. Is that the rule? I believe in part. I mean, any Federal statute that can be sued upon both in Federal courts and in State courts, but as to which Federal courts are the dispositive adjudicators, you say that that does not come within this rising under rule. It does not come in with this Court's doctrinal holdings in Grable and Empire because we have a Federal balancing and State balancing issue.  Do you have a case for that that says if a suit could be brought in State court, even though it involves a dispositive Federal question as to which this Court would be, you know, the last interpreter, it cannot possibly come within a rising under jurisdiction? Do you have a case for that? I'm sorry, Your Honor, I don't know if I followed your question. Do you have a case which says that when a Federal question is presented in a case over which Federal courts have jurisdiction, but also State courts have jurisdiction, although, needless to say, the Federal courts would be dispositive on the issue, such a case cannot come within the arising under jurisdiction? No. I don't think anything that sparsely, but the AMT and the Federal circuit. Scalia I would find it extraordinary for that to be the rule. Well, you can't isolate it. That rule is more complicated because it is the application of the Grable standard that's the analysis. When you look at it. Kennedy But, again, Justice Ginsburg simply made the point, I had thought, that you place a good deal of reliance on the fact that there's exclusive jurisdiction. And her question to me pointed out how far-reaching this case might be because it could involve patents, copyright, all other areas of exclusive jurisdiction. If that's going to be your special rule, it's not so confined as you suggest. That's all that question meant to me. Certainly, you could have cases where there's concurrent jurisdiction, 1983, in which we'd have the same problem. I think the factors that go into determining the one of the grounds that has been articulated by Grable and the balancing from Merrill Dow is the number of cases that would come into Federal court. And it is a doctrinal decision. It is a doctrinal rule. Sotomayor So patent law cases of malpractice are smaller in number than copyright cases. Patent law cases. Sotomayor Immigration, other exclusive jurisdictions. So that's okay to remove, but those others aren't. Does that make a whole lot of sense? That is the articulation in Grable, Your Honor. Well, how about a different one, the one that's being proposed by your adversary, which is defined substantial as to how it affects Federal law, which I think was the bottom line or the development of Federal law, the bottom line of Grable. And she says, you dispute this in your brief, that it doesn't affect the invalidated patent, that there's no way that a judgment on the malpractice is going to be used in a continuation patent dispute because it's not one of the listed preclusive courts. So how does a ruling? Sure. Many ways, Your Honor. First, the test is uniformity under Grable, the uniformity of patent law, Federal law, not whether the its own. Why is — who's going to follow it? In many situations, for example, she conflates, Petitioners conflate Reyes-Judicata with issue preclusion. That goes back to your earlier question, Justice Sotomayor, in that issue preclusion will have an effect. And as, in fact, it's a preclusion that applies only to someone who has a party. Correct. That would only apply to the inventor. It would not apply to the PTO. It can only be used against, in this case, Mr. Mitton. And, in fact, Patent Council in this case, under the rules of the Federal circuit, under patent law and the patent manual, disclosed the State court's rulings in this case to the Patent Office during its continuing patent. The State district court judge made a scope and claim decision. So, Justice Sotomayor, back to your question. But that certainly is not binding. Whatever the State court says, as a matter of patent law, has no binding effect on that question coming to Federal court. It does. Under this Court's decision in Morrissey v. The Academy of Orthopedic Surgeons, a State court's decision is entitled to issue preclusion even in Federal forum. And so that is why also the patent, the continuation patent could be declared invalid for failing to disclose that information. We're not saying it's binding on the PTO, but it is an issue of issue preclusion as against Mitton that will be in front of the PTO and is in front of the PTO as we  So it's just the State court's decision. Scalia, my goodness, but you're going to have a purely hypothetical State decision here. The State will have held it. You know, if he had said this, the result would have been something else. And you think that that precludes the issue when it arises in real life? You say since the State court made that hypothetical determination, it precludes me from arguing it in real life. Yes. It is the factor of issue. Do you have any cases like that? It seems to me a rather weird situation. I mean, maybe it could, but it's strange. Well, it is a matter of issue preclusion. This Court, that is the danger of allowing these patent law issues to proceed in the State court. This Court, the State district court in this case, entered in a brand new issue of Federal. Petitioners and Respondents totally disagree as to whether this is a fact-specific case or whether this case involves issues of law. And, in fact, we contend it involves issues of first impression. In this case, the State district court made holdings about issues of whether the question of the experimental use exception is a question of law or a question of fact. It made a requirement that the experimental use had to go to a required claimed element as opposed to a claimed element. It made the determination, and the court of appeals made the legal determination  Those are all issues of not only disputed substantial issues of Federal patent law that both parties submitted briefing in the trial court and the court of appeals 70 pages long disputing the legal. Sotomayor, besides the parties, how else does it affect the development of patent law? Who else is going to follow this malpractice determination? It's going to have a really profound effect on the patent law practitioners who are uniquely situated and work in parcel and interlocking with the patent office. It is the patent lawyers who draft the patents. It is the patent lawyers who present them to the patent office. They are the ones who engage when they need to be amended or refined or narrowed or broadened. Who is the State? Who are the Federal? Scalia, They knew these were controverted issues. You say that they are controverted issues. So they would have been alerted to a problem anyway. And they certainly would not accept a State court determination as authoritative resolution of that problem. Who? The patent? The patent attorneys. I mean, you're No, the patent attorney will have to take that as guidance because their new taskmaster will not be following Federal patent law, because in this case the court injected a brand-new requirement that was never held by a patent lawyer, that you had to have an expert witness testify to establish your experimental use testing exception. That's never been held anywhere in Federal patent law. So now, who is the patent lawyer going to be looking to for guidance? The exclusive Federal courts, the patent office, guidance from the Federal Circus? No. They are going to have their backs watched by the State court saying, aha, you know what, I'm going to impose a new legal obligation on you and you're going to be held for malpractice. And that's not reviewable. That's not reviewable. Ginsburg's question is, what would happen if that came up in an ordinary litigation in Federal court and the Federal circuit ultimately decided the question that the State court was entirely wrong about this, you don't need a witness? Well, that's the end of it, right? Once the Federal court decides the question, then whatever the State judge thought was the Federal law is gone. No, that's exactly the problem. The State's courts aren't bound by the Federal circuit's holding. There will be no Federal review of substantial issues of Federal law, zero, unless this Court is going to add to that. Scalia, the State courts are not bound by the Federal court's holding? You mean State courts can resolve patent questions contrary to what the Supreme Court of the United States says the law is? No, not contrary. That was the point I was going to make. Not contrary to the holdings of the United States Supreme Court, contrary to the Federal circuit's holding. In fact, the Fort Worth Court of Appeals did not follow the Federal circuit's holding in this area. Kagan, are you saying, Mr. Michel, that what the State courts are going to do is to say that notwithstanding that the Federal circuit has ruled on a matter and notwithstanding that the lawyer has complied with the rule as articulated by the Federal circuit, that nonetheless they will be held to have committed malpractice because they didn't comply with the State's rule? Is that what you think the State judges are really going to do? I think the State judges are going to try to possibly apply Federal circuit holding. In this case, they did not. They injected a new holding, which established a new liability for the patent lawyers, which is not reviewable unless this Court were to grant certiorari review. And so that then leaves the only review on these material. These are going to be substantial issues of Federal law. Sotomayor, that certiorari, that's binding on everybody else in the State? No, it's binding on the State court practitioners in that State who get sued for legal malpractice. And it's that interrelationship between the lawyers who are drafting patents. They are going to be getting. Kagan, once the lawyer says to the court, says, you know, I complied with all the Federal rules, all the rules from the Federal circuit, I complied with, you're suggesting that the State court is going to say, too bad, you committed malpractice anyway, because you didn't comply with our hypothetical law about patents. They did that in this case, at 214. It's not, it's not, I guess it's not their hypothetical law. They would be saying, this is what we think the Federal law requires. And while we're happy, or not happy, but it's interesting that the Federal circuit thinks something else, but that doesn't bind us. Correct. Correct. And it's not just hypothetical. Hypothetical doesn't mean insubstantial. Hypothetical means that. Scalia, I mean, it seems to me it's twiddle-dum or twiddle-dee, whichever court system you go to, you're going to terrorize the lawyers of that State on the basis of an opinion of a court that is not dispositive.      It's going to do that. It's going to do that. And they're going to be very sensitive on those issues. So I don't know why. I think we disagree. Here, when you try, for example, in the patent infringement case, the sole trial is going to be the patent infringement. You're going to try the Federal lawsuit, Your Honor, Justice Scalia. You're trying that patent infringement lawsuit in State court in the case within the case analysis. The Federal rules, that's what was so troubling about this case. And you're trying the malpractice lawsuit, the State malpractice lawsuit, in Federal court. Correct. But the application and the rules governing it are going to be by Federal law. The rules in this case, in particular, the substantial issue of the experimental use exception, the only issue we're saved, this was the experimental use exception. We disagree that just because the State court makes an opinion and a holding, it doesn't have real-world effects. It really does. It's not an advisory opinion. And there needs to be a distinguishment between the side issue the Petitioners are saying, and they're trying to get you to focus on this one micro issue of whether it will affect an actual patent as to whether it will affect patent law. And it will affect patent law, and it will affect the application of patent law. And so what you're going to have is you're going to have two diverging systems. You're going to have one on the Federal side, and then you'll have 50 jurisdictions espousing what they think the law is of patent law and not being bound by the Federal circuit, which granted exclusive patient-like jurisdiction. Ginsburg. Any time, I mean, a lot of patent questions, as your colleague pointed out, a lot of patent questions come up in State court litigation, contract litigation. Every time you have a patent question, then must the case go to the Federal court, in your view? No, that is not our position. So what's the dividing line between patent questions that belong in State court and patent questions that belong only in Federal court? For example, not every malpractice case, it will be the case-within-the-case doctrine in a patent case that will go to Federal court. For example, failure to communicate a settlement offer does not have a case-within- the-case. In a business transaction, it doesn't have the case-within-the-case analysis. So those malpractice arises from them, will not go to Federal court. Breaches of fiduciary duty for divestiture of fees don't have the causation element. So we are talking about a case that has a patent issue, whether it's a contract case, a tort case, a malpractice case, if it has a patent issue, you think it has to go to Federal court. We do not. Well, then, I repeat Justice Ginsburg's question. How do you decide which of those do and which of those don't? I think this is a case in point. This case is on all fours with labor. There is no exception. The only distinguishing factor is this hypothetical argument of the case-within- the-case analysis. Ginsburg. But let me just stay with the line you're going to give us. You have said not every patent question that comes up in a State court is a patent question. It's dismissed so you can start over in Federal court. What patent questions, and I'll talk about breach of fiduciary duty, general law questions. What patent questions are properly adjudicated in the State court as part of a public lawsuit? Well, the distinction is, for example, in a licensing case, in a patent case, where you – those cases are brought in Federal – I'm sorry, are brought in State court. Our request here is, following Grable, that what will go to Federal court are legal malpractice cases arising from substantial issues of Federal patent law that have that case-within-the-case analysis. And it's that narrow, extremely narrow window of cases. This is not Katie, bar the door. We've set forth the empirical numbers. They're going to be microscopic. But what they do have is Grable's test. Every element that Grable articulated, this case meets. It does involve substantial issues of first impression. But what was the substantial Federal matter in Grable? The issue of the IRS, whether personal service had to be given under an IRS. Yes. And that was going to control the actions of the Federal agency of IRS. Correct. And we have no counterpart for that here. We do have rules that will govern the law on experimental use exception. You have – you have. And that will govern the application in Federal court. That's why it should be in Federal court, to govern how the agency and whether a patent – and this goes directly, it affects patents. This is going to patent validity. But the Federal court, you said before that whatever the Federal circuit says, the State doesn't have to follow it next time there's a case in State court. But the Federal court is certainly not going to follow what the State judge says on experimental use. It does. I'll tell you, the reason why it does, it's in the doctrine of collateral estoppel. It affects the inventor. It's affecting the inventor in this case. This holding of the State district court and the State court of appeals are now before the patent office. Sotomayor, how does it – the patent's invalid. I'm sorry? The patent's invalid. Nothing the Court does here is going to change that invalidity. That's what I don't understand. Correct. He's not going to get his patent back from the section. That's correct. He's going to get money for losing it, maybe. Correct. So how does it affect the patent? There's a pending continuation patent. And that is what's going to happen. But back to that issue. Yes. But that is a collateral estoppel issue. Let me give up another scenario, because in a different role, when the patent is not declared invalid and instead there's a finding of non-infringement, and that's what gives rise to the legal malpractice case. Then you go to State court, and in that situation, the determination of infringement will be raised as a basis for legal malpractice against the lawyer in the malpractice section. Then the lawyer's raise, as within the case-within-the-case exception, is that, oh, the patent was invalid. So then in that situation, a State district court will be rendering an opinion on a live patent, and then that will be binding on the inventor. And will affect real, live, actual patents. And it does affect patents before the Patent Office. Petitioners said we – it's not an issue of raised judicata. They cite a rule – that's not our argument. It's an issue of issue preclusion. It's also the duty and the obligation of the lawyer to disclose that judicial discussion to the Patent Office. Otherwise, his continuation patent could be declared invalid for inequitable conduct and for not disclosing material information. Ginsburg. And your distinction between other areas of Federal jurisdiction where the Federal law controls and patent is what? What Justice Sotomayor brought up, immigration law, copyright law, why don't they – why doesn't what you have said work the same way in those fields? I think there are distinctions in the area of patent law versus any other area of the law, and that goes to the analysis of the State-Federal balance. That's why the exclusive Federal court jurisdiction, that's why exclusive nationwide jurisdiction in patent law in the Federal circuit is different than any other area of the law. It is that balancing test that we are required to engage in. That's why it's unique from antitrust, trademark, civil rights, securities, employment. Those have concurrent jurisdiction. They may not have an agency involved. For example, bankruptcy initially sounds like it's exclusive Federal court issues, but when you look underneath the bankruptcy, there's court proceedings and there's non-court. Non-court are concurrent. Those can be heard in State court. Secondly, those underlying issues in bankruptcy typically involve State property right issues anyway. So they are really applying whether somebody has a perfected security interest lien, whether somebody has a justified debt, whether things of that nature. So rather than in any other area of law, these other areas, even if they are exclusive in Federal court jurisdiction, some of those underlying issues are basically based on who the party is, and they are still applying underlying jurisdiction. Ginsburg. So your case turns on the Federal circuit having exclusive appellate jurisdiction. That is one of the most defining factors on the State-Federal balance of judicial responsibility. Our understanding of that analysis of the Federalism and also the articulation of just, as we have showed up, the Petitioner said a whole ton of cases we are going to come in, we supported statistics that the numbers will be very small, but the distinguishing factor, because of the balancing test that we are required to engage in. Ginsburg. But if there's a large Federal interest, I mean, that's what you're saying, that there is in the Federal-State balance, the Federal balance, it's pondered on the Federal side. If there is that large Federal interest, is it surprising that the government hasn't come into this case? Is there such a Federal interest to be protected? No. I think the Federal government — I can't speculate for that, Justice Ginsburg. There could be just as many reasons why they didn't come in on this case, just like they don't come in on many other cases. But the Federal interest here in the national uniformity, I think, has been well stated both by this Court and the Federal circuit. There's a difference between you and your colleague on what substantial means. Yes. Ginsburg. And she says it doesn't just mean necessary, essential in this particular litigation, but as in the Grable case and the Kansas City Title and Trust, has larger ramifications for many other cases, not just this case and whether there's going to be issue preclusion as to this particular inventor. Those — I don't see an issue in this case comparable to those. I think there are a number of issues of greater importance than just this case. The question is the ongoing conflict in Federal patent law on whether the experimental use exception is a question of law or a question of fact. The Federal circuit has gone both ways on that. Whether the issue of buyer knowledge is a conclusive factor or whether it is just one of the 13 factors. But if they — those questions will come to the Federal circuit and they'll decide it, and then they'll be settled. Well, we would hope they would be settled, but then we're going to have this whole other body of law out there in State courts that aren't bound by the Federal court to answer those questions. And those will govern the practice of patent lawyers. How likely is that in practice that once the Federal circuit weighs in, that the State judges will go their own way? I think it's a very real possibility. We've had it happen. Scalia, my experience is that Federal judges, including this Federal judge, are not interested in getting into the weeds of patent law. And if they could rely on a decision of the Federal circuit, they would do that just as fast as they can. You would think so. It doesn't appear to be the case, because in this case, we had holdings that it — experimental use exception, nowhere held in Federal law. The problem is these judges often will have never handled a patent law in their career. This will go to some judges who have been in family law, got elected at the district court, and will never have decided or looked at a patent law case. We would request that they do the same thing for Agitrust, because that's the only thing that's going to happen. Ginsburg, are you saying for copyright? But the articulation isn't the same. There are other — in Antitrust, there are State analogs. The judges are familiar with applying it. In fact, the State of Texas in Coca-Cola v. Harmer stated that there's a high interest in its own State interest. I mean, Antitrust laws. Same with Trademark. Trademark is concurrent jurisdiction. The limited area that applies these factors, going back to the balancing test, is extremely narrow. Patent law is unique in that area of almost any other area of law. We think the Texas Supreme Court got this decision right. We request that the Court follow Grable and apply Grable to the case at hand. Thank you. Roberts. Thank you, counsel. Ms. Weber, you have four minutes remaining. Ms. Weber, can I ask you about the question presented? The way you presented it to us, it was as though we're reviewing whether the Federal Circuit was right to reject Grable. In whatever the names of those opinions are. But in fact, that's not the situation at all. The Texas Supreme Court here applied Grable. And I think just the way you would want it applied. So your contention is simply they didn't apply it correctly. Isn't that right? I disagree, Your Honor. The Texas Supreme Court didn't properly apply Grable. What they applied was the Federal Circuit's improper departure from Grable in two ways. One is they conflated necessity with substantiality. And that comes in the Federal Circuit's jurisprudence, that comes from a sound bite from the earlier Christensen case, where the line goes something like, there is a substantial Federal issue because it is necessary to the party's claim. And so it conflates necessity with substantiality. And the Texas Supreme Court followed the Federal Circuit's construct. They said we're applying Grable, we're looking at substantiality, but then they did exactly what the Federal Circuit did. And ditto with the Federalism balance. They pointed to the need, the Federal interest in the uniformity of patent law, and that was the end of the inquiry. And I think that that is a measure of the deference that the Supreme Court of Texas, as other State courts would do, the deference they grant to the Federal Circuit in deciding the question of appropriate scope of patent jurisprudence and the relative importance of the uniformity of patent law. And so we arrive to you from the Supreme Court of Texas, but truly presenting the appropriateness of the Federal Circuit's redone application of the Grable test. Sotomayor, could you answer the one point your adversary raised that gives me pause, a lot of pause? He says, A ruling on patent law of how you should or should not behave in a State malpractice claim will affect all of the lawyers who practice in your State, because each of them will have to do or not do whatever that malpractice ruling was, because that's what the State is going to — State courts will follow in the future. So it will change those lawyers' behaviors in Federal court. Your Honor, I think that that is such a speculative road to go down. What is it the lawyers are going to do different? A lawyer — They're going to present an expert all of the time when they don't need to. They're going to do some extra work and make an extra belt along with the suspenders that they're required to do. And where is the harm in that? And where is the undermining of the uniformity of patent law if a lawyer in a real patent case in Federal court — But you can think of an example where, not perhaps on the facts of this case, but where a State court's ruling could, in fact, establish a code of behavior that's not just belts and suspenders, that's something else. Your Honor, I think that — that spinning out a hypothetical on that would be truly speculative. It's hard to imagine a situation where it would be contrary or in tension with what the Federal courts would hold, particularly since, as I agree with Justice Scalia's construct, that the State courts are going to try to apply appropriate Federal law. What about just the flip side of this case? Let's suppose they said, no, you don't need an expert, so it's not belt and suspenders. It's neither belt nor suspenders. That's going to affect the conduct of the lawyers in the State in a way that would be disruptive of the uniformity of Federal patent law. If an expert is required under Federal jurisprudence, then an expert is required in a real patent case. And if a State court makes a mistake in a — in an occasional case here or there, then a lawyer practicing in a real patent case, in a real case in Federal court, needs to make sure that they're complying with the requirements. And if you're going to — Roberts. Well, right, the requirements of the Federal law. The question is, there's going to be a different interpretation of what that means in the State court and in the Federal circuit. Well, Your Honor, if there is a conflict, then what you're supposed to follow is the jurisprudence of the courts who — before whom you're practicing. If the Federal circuit or a Federal district court has said something about patent law, then that's what the lawyer should follow in prosecuting a patent case. And a lawyer who decides, I'm going to disregard the Federal circuit's standards on fact question, expert required, whatever it is, and instead follow the Fort Worth court of appeals on this issue, I submit that — that the lawyer does so at his peril, and that doesn't undermine the appropriate uniformity of patent law. Thank you, counsel. The case is submitted.